Pearson, J.
 

 We do not concur with his‘ Honor as to the meaning of the word, incompetent, as used in the statute. When two persons, who claim a right to administer, are in equal degree, the court may, in its discretion, grant the administration to one or both, “ or if the person, applying, shall be deemed incompetent, then the court may grant administration to some discreet person.” Ilis Honor was of opinion that the word, incompetent, applied to the
 
 mmd,
 
 and had regard to
 
 mental
 
 incapacity, and as the widow was a woman of ordinary capacity, and a
 
 hale and hearty
 
 woman, but had no experience in this business, he directed her to be appointed. One object of the statute was to provide that the management of estates should be entrusted to none but
 
 fit
 
 and
 
 discreet persons,
 
 and the word “incompetent” is obviously used in the sense of “ unfit.” This may be on account of mental incapacity, or bodily infirmity, or ignorance and inexperience in matters of business, such as keeping accounts, deciding upon the justness of claims, and many things of the kind, which require a considerable degree of experience, and capacity for the transaction of business. In this sense of the word, a woman who can neither write, nor read writing, and has no experience in business, is incompetent and unfit to be entrusted with the administration of an estate, although she may be ever so
 
 hale and
 
 hearty, and capable of much bodily endurance. The latter qualities would make her fit for an appointment where hard work was the .object, but not for one where accounts are to be kept, and settlements to be made and returned to court. Indeed, such a woman, acting as ad-ministratrix, would be forced to trust to agents, and be at the mercy of designing persons, thereby exposing the interest, of the other persons, who are interested in the estate, as well as her own, to the danger of much loss from mismanagement, if not from corruption ; against which, it was the purpose of the statute to provide a safeguard.
 

 
 *474
 
 But it is objected, tbis is a matter confided to tbe
 
 discretion
 
 of the court below, and consequently, this Court cannot interfere.
 

 That would be true, provided his Honor had exercised his discretion; but the error into which he has fallen, cramped his action, and did not leave him free to make the appointment according to his sound discretion. So, this construction of the statute presents a question of law, and makes it our duty to correct the effect of his Honor’s erroneous opinion in regard to it. In
 
 Freeman
 
 v. Morris, Busb. Rep. 287, his Honor refused to entertain a motion to amend, on the ground, that he had no power to allow the amendment. The judgment was reversed, because by reason of his erroneous opinion in respect to his want of power, he had not exercised his discretion. Our judgment is the same in this case, for the same reason. “The judgment must be reversed, and this opinion certified with directions to the Judge of the Superior Court, to proceed to make the appointment according to his sound discretion.”
 

 Peis CuexaM. Judgment reversed.